

*U.S. Department of Justice*

*United States Attorney*
*Eastern District of New York*

SDD:SK
F. #2013R01172

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

June 16, 2014

<u>By Hand and ECF</u>

The Honorable Leonard D. Wexler
United States District Court Judge
Eastern District of New York
944 Federal Plaza
Central Islip, New York 11722

      Re:    <u>United States v. John Collymore</u>
              <u>Criminal Docket No. 13-504 (LDW)</u>

Dear Judge Wexler:

On September 13, 2013, the defendant John Collymore pled guilty to three counts of willfully making and filing false tax returns, in violation of 26 U.S.C. § 7206(1). The government respectfully requests that the Court sentence the defendant to a term of incarceration within the applicable Guidelines range of 18 to 24 months. The government respectfully submits that such a sentence would be sufficient, but not greater than necessary, to achieve the purposes set forth in 18 U.S.C. § 3553(a).

    I.    <u>Background</u>[1]

The defendant is married to an emergency room physician with a solo practice under the name of Park Slope Medical Offices ("Park Slope"). The defendant is responsible for Park Slope's finances and the couples' personal finances, including maintaining Park Slope's corporate account, making deposits, writing checks, transferring funds, reconciling bank accounts, and keeping all financial records. Each year, the defendant compiles the tax-related financial information for himself and his wife, including the income and expense

---

[1] The government agrees with the facts as set forth in the Presentence Investigation Report ("PSR").

1

figures for Park Slope, and transmits that information to the couples' tax preparer. For the 2006, 2007, and 2008 tax years, the defendant transmitted false income and expense figures. Specifically, the defendant underreported his wife's income by approximately half (see Table 1) and over-reported his wife's business expenses (see Table 2). He did so by providing the figures to their tax preparer on a handwritten piece of paper and verbally.

Table 1: Underreported Income

| Tax Year | Reported Business Income | Corrected Business Income | Under-reported Income |
|---|---|---|---|
| 2006 | $200,000 | $390,694 | $190,694 |
| 2007 | $230,083 | $420,883 | $190,800 |
| 2008 | $222,669 | $545,240 | $322,571 |
| TOTAL | $652,752 | $1,356,817 | **$704,065** |

Table 2: Over-reported Expenses

| Tax Year | Reported Business Expenses | Corrected Business Expenses | Over-reported Expenses |
|---|---|---|---|
| 2006 | $53,602 | $37,556 | $16,046 |
| 2007 | $82,337 | $27,732 | $54,605 |
| 2008 | $78,214 | $32,446 | $45,768 |
| TOTAL | $214,153 | $97,734 | **$116,419** |

After the tax preparer prepared the couples' tax returns using the information provided to him by the defendant, the defendant signed the tax returns and mailed them to the Internal Revenue Service ("IRS"). The defendant was aware of what each return reflected and mailed the completed false and fraudulent income tax returns to the IRS knowing at the time that they contained false and fraudulent material misstatements. The

2

defendant's false reporting resulted in an underpayment of taxes in the amount of $369,415 over the three tax years at issue (see Table 3).

Table 3: Tax Due and Owing

| Tax Year | Date Filed | Under-reported Income | Over-reported Expenses | Tax Due and Owing |
|---|---|---|---|---|
| 2006 | 10/15/2007 | $190,694 | $16,046 | $ 98,637 |
| 2007 | 4/15/2008 | $190,800 | $54,605 | $114,032 |
| 2008 | 4/15/2009 | $322,571 | $45,768 | $156,746 |
|  |  |  | **TOTAL:** | **$369,415** |

II.     Guidelines Calculation

The government offers the following United States Sentencing Guidelines ("U.S.S.G.") calculation:

Base Offense Level - Tax Loss More than $200,000                18
(§§ 2T1.1, 2T4.1(G))

Less: Acceptance of Responsibility                              −3
(§ 3E1.1)

Total:                                                          15

The total offense level is 15 and, based on a criminal history category of I, the Guidelines range of imprisonment is 18 to 24 months.

III.    Legal Standard

In the Supreme Court's opinion in United States v. Booker, 125 S. Ct. 738, 743 (2005), which held that the Guidelines are advisory not mandatory, the Court made clear that district courts are still "require[d] . . . to consider Guidelines ranges" in determining a sentence, but also may tailor the sentence in light of other statutory concerns. See 18 U.S.C. § 3553(a). Subsequent to Booker, the Second Circuit held that "sentencing judges remain under a duty with respect to the Guidelines . . . to 'consider' them, along with the other factors listed in section 3553(a)." United States v. Crosby, 397 F.3d 103, 111 (2d Cir. 2005).

In Gall v. United States, 128 S. Ct. 586 (2007), the Supreme Court elucidated the proper procedure and order of consideration for sentencing courts to follow: "[A] district court should begin all sentencing proceedings by correctly calculating the applicable

3

Guidelines range. As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark." Gall, 128 S. Ct. at 596 (citation omitted). Next, a sentencing court should "consider all of the § 3553(a) factors to determine whether they support the sentence requested by a party. In so doing, [the district court] may not presume that the Guidelines range is reasonable. [It] must make an individualized assessment based on the facts presented." Id. at 596-97 (citation and footnote omitted).

  IV. Argument

  The defendant has asked this Court to impose a mere probationary sentence. Such a sentence would represent a significant departure from the Guidelines, see U.S.S.G. § 5B1.1 n. 2, and be insufficient to achieve the purposes set forth in 18 U.S.C. § 3553(a).

  The government respectfully requests that this Court impose a term of incarceration within the Guidelines range. A term of incarceration would reflect the seriousness of the defendant's crimes, provide adequate deterrence to the defendant and to others contemplating similar acts, and fall within the range of sentences imposed in other cases involving tax fraud offenses.

  A. Nature and Circumstances of the Offense, 18 U.S.C. § 3553(a)(1)

  The defendant's conduct in this case was serious -- he willfully defrauded the United States and failed to honor his tax liabilities, as a citizen and as the individual responsible for the finances for himself, his wife, and Park Slope. As a result, the defendant imposed upon the United States a total tax loss of $369,415.

  The defense claims that an injury the defendant sustained in a car accident in July 2008 is a "very good explanation" for his crimes, although "not an excuse." (Def. Memo. at 11). It is neither. The defendant began his pattern of fraud long before his injury: he filed a false 2006 tax return on October 15, 2007, and again filed a false 2007 tax return on April 15, 2008. Both filings predate the car accident. The defendant then continued his pattern of fraud long after his injury: he filed a false 2008 tax return on April 15, 2009, and failed to take any action to correct his three-year-long fraud until criminal prosecution became a reality.

  To be sure, the defendant eventually made the decision to accept responsibility for his criminal conduct and plead guilty to an information. The government notes, however, that the defendant's Guidelines range already includes a 3-level decrease for acceptance of responsibility.

  The defense argues that a downward departure from the Guidelines is appropriate in "extraordinary" family circumstances. (Def. Memo at 14). However, the defendant's circumstances are not extraordinary. Unlike the defendants in the cases cited by the defense, the defendant is not the only or only significant source of his family's income

4

(see United States v. Galante, 111 F.3d 1029, 1032 (2d Cir. 1997); United States v. Johnson, 964 F.2d 124, 129-30 (2d Cir. 1992)); the defendant does not suffer from a degenerative condition (see United States of America v. Burks, No. 08–CR–332, 2010 WL 1221752, at *2, (E.D.N.Y. 2010) (JBW)); the defendant does not have minor children (see Galante, 111 F.3d 1029, 1032; Johnson, 964 F.2d 124, 129-30; United States v. Alba, 933 F.2d 1117 (2d Cir. 1991); Burks, 2010 WL 1221752, at *2); and the defendant does not have children with special needs (see Johnson, 964 F.2d 124, 2010 WL 1221752, at *2). Instead, the defendant's wife is a successful professional with significant real estate assets, and the defendant's daughter is working towards becoming the same.

The defendant also states that his case is not a "typical criminal tax case" where, for example, "a defendant skims cash out of a business to fund a lavish lifestyle." (Def. Memo. at 11). But here, the facts speak for themselves. The defendant lived in a two million dollar home in Oyster Bay, New York, and owned multiple vehicles including two Mercedes Benzs and two BMWs. (PSR ¶ 54). Despite being able to afford these luxuries, the defendant still decided to flout his responsibilities as a citizen and taxpayer.

### B. The Need to Promote Respect for the Law and To Afford Adequate Deterrence, 18 U.S.C. § 3553(a)(2)

The need to promote respect for the law and to afford adequate deterrence are primary considerations in criminal tax cases. Honest reporting and payment of taxes are critical because:

> The system of tax collection in the United States relies upon the honesty of taxpayers. The government needs taxpayers to report timely, completely, and honestly all taxes they owe so that it can collect the taxes due. Congress, therefore, has made it a criminal offense for a taxpayer to evade taxes, to file a false return, or to file no return, under certain circumstances.

(Leonard B. Sand, et al., Modern Federal Jury Instructions-Criminal, P59.03, Instruction 59-19 (2010)). Deterrence is thus critical not only to ensure that a particular individual pays the taxes that the individual owes, but also to ensure that others continue to be honest taxpayers. See also United States v. Cutler, 520 F.3d 136, 163 (2d Cir. 2008) ("Because of the limited number of criminal tax prosecutions relative to the estimated incidence of such violations, deterring others from violating the tax laws is a primary consideration underlying these guidelines." (quoting U.S.S.G. Ch. 2, Pt. T, intro. comment.)).

The need for strong general deterrence is overwhelming. The most recent IRS estimate of the net annual tax gap was $385 billion.[2] that the net annual tax gap gross

---

[2] The tax gap has two components: the gross tax gap and the net tax gap. The gross tax gap is defined as the amount of true tax liability faced by taxpayers that is not paid on time. The most recent IRS estimate of the gross annual tax gap was $450 billion. The net tax gap is defined as the portion of the gross tax gap that is never paid, even after enforced

annual tax gap is $450 billion. (Internal Revenue Service, Federal Compliance Research: Tax Year 2006 Tax Gap Estimation 2 (2012)). Underreporting of individual income and self-employment taxes -- the defendant's crimes -- are among the largest contributors to this gap. These categories contribute $235 billion (52.2%) and $57 billion (12.7%) to the gap, respectively. (Id.) However, the IRS's resources permit it to examine only 0.96% of the 145.8 million individual tax returns that it receives per year. (Internal Revenue Service, Fiscal Year 2013 Enforcement and Service Results 2 (2014)). Criminal investigations are exceedingly rare, and the IRS only recommends 2,500 cases for prosecution per year. (Id. at 8).

  C. Need to Avoid Unwarranted Sentence Disparities Among Defendants Guilty of Similar Conduct, 18 U.S.C. § 3553(a)(6)

The criminal tax provisions of the U.S. Sentencing Guidelines were established explicitly in part "to reduce disparity in sentencing for tax offenses." (U.S.S.G. § 2T1.1 Background; see also 28 U.S.C. § 991(b)(1)(B)). And as the Supreme Court has stated, "even though the Guidelines are advisory rather than mandatory, they are . . . the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions." (Gall v. United States, 552 U.S. 38, 46 (2007)).

The Guidelines here -- advising a term of imprisonment and rendering the defendant ineligible for probation -- are consistent with recent sentencing decisions from numerous courts imposing terms of imprisonment in cases involving individuals who have pled guilty to tax fraud offenses:

|   | Case | Charges | Disposition | Sentence | Tax Loss | Sentencing Date |
|---|---|---|---|---|---|---|
| 1 | United States v. Pedley, No. 13-CR-69 (D. Minn. 2014) (MJD) | 26 U.S.C. § 7201 (4 counts) | Guilty plea/ Indictment | 12 months and 1 day | $489,623 | May 21, 2014 |
| 2 | United States v. Annetta, No. 13-CR-285 (D.N.J. 2014) (PGS) | 26 U.S.C. § 7201 (1 count) | Guilty plea/ Information | 20 months | $536,530 | May 21, 2014 |
| 3 | United States v. Dominico, No. 11-CR-532 (D.N.J. 2014) (NLH) | 26 U.S.C. § 7206 (1 count) | Guilty plea/ Indictment | 18 months | $840,321 | May 14, 2014 |
| 4 | United States v. Meyers, No. 12-CR-570 (E.D.N.Y. 2014) (DRH) | 26 U.S.C. § 7201 (1 count) | Guilty plea/ Indictment | 12 months | $872,261 | May 9, 2014 |
| 5 | United States v. Horany, No. 12-CR-298 (D. Colo. 2014) (RBJ) | 26 U.S.C. § 7201 (1 count) | Guilty plea/ Indictment | 12 months | $195,280.73 | May 8, 2014 |

---

and other late payments. The $65 billion difference between the net and gross tax gap estimates represents the amount of the gross tax gap that will eventually be collected through IRS enforcement efforts and other late tax payments. (Internal Revenue Service, Federal Compliance Research: Tax Year 2006 Tax Gap Estimation 2-3 (2012)).

6

| | | | | | | |
|---|---|---|---|---|---|---|
| 6 | United States v. Obebe, No. 14-CR-1 (M.D. Ga.) (CDL) | 26 U.S.C. § 7201 (1 count) | Guilty plea/ Information | 12 months and 1 day | $189,661 | Apr. 29, 2014 |
| 7 | United States v. Dunaway, No. 13-CR-141 (E.D. Tenn.) (TAV) | 26 U.S.C. § 7206(1) (1 count) | Guilty plea/ Information | 12 months | $200,001 - $400,000 (by stipulation) | Apr. 23, 2014 |
| 8 | United States v. Carpenter, No. 12-CR-116 (W.D.N.C. 2014) (GM) | 26 U.S.C. § 7206(1) (2 counts) | Guilty plea/ Indictment | 27 months | $507,995 | Apr. 15, 2014 |
| 9 | United States v. Bosh et al., No. 13-CR-676 (D. Utah) (CW) | 26 U.S.C. § 7206(1) (1 count) | Guilty plea/ Information | 24 months 24 months | $563,672 $610,467 | Apr. 1, 2014 |
| 10 | United States v. D'Errico, No. 11-CR-376 (D. Nev. 2014) (JCM) | 26 U.S.C. § 7201 (1 count) | Guilty plea/ Indictment | 6 months | $158,076 | Mar. 19, 2014 |
| 11 | United States v. Morton, No. 13-CR-622 (D.N.J.) (PGS) | 26 U.S.C. § 7206(1) (1 count) | Guilty plea/ Information | 12 months and 1 day | $241,412 | Mar. 11, 2014 |
| 12 | United States v. Cavanaugh, No. 13-CR-10087 (D. Mass. 2013) (GAO) | 26 U.S.C. § 7206(1) (4 counts) | Guilty plea/ Information | 18 months | $69,447 | Feb. 13, 2014 |
| 13 | United States v. Neuhoff, No. 13-CR-331 (E.D.N.Y) (ERK) | 26 U.S.C. § 7201 (1 count) | Guilty plea/ Information | 12 months and 1 day | $400,000 - $1,000,000 (by stipulation) | Jan. 27, 2014 |
| 14 | United States v. Patel, No. 13-CR-171 (E.D. La. 2013) (SSV) | 26 U.S.C. § 7206(1) (1 count) | Guilty plea/ Information | 13 months | $393,048 | Dec. 11, 2013 |
| 15 | United States v. Cooper, No. 13-CR-20553 (S.D. Fla. 2013) (RSR) | 26 U.S.C. § 7201 (1 count) | Guilty plea/ Information | 12 months and 1 day | $687,475 | Nov. 18, 2013 |
| 16 | United States v. Elliott, No. 13-CR-85 (E.D. Va. 2013) | 26 U.S.C. § 7206(1) (1 count) | Guilty plea/ Information | 18 months | $181,192 | Oct. 3, 2013 |
| 17 | United States v. Rosenberg, No. 12-835 (S.D.N.Y. 2013) (PGG) | 26 U.S.C. § 7201 (1 count) | Guilty plea/ Information | 6 months | $334,345 | Mar. 30, 2013 |
| 18 | United States v. Gorodesky, No. 12-CR-516 (E.D.N.Y. 2013) (JBW) | 26 U.S.C. § 7201 (1 count) | Guilty plea/ Information | 4 months | $188,757 | Feb. 27, 2013 |
| 19 | United States v. Rabkin, No. 12-CR-515 (E.D.N.Y. 2013) | 26 U.S.C. § 7201 (1 count) | Guilty plea/ Information | 4 months | $148,999 | Feb. 22, 2013 |

V.  Conclusion

For the foregoing reasons, the government respectfully requests that the Court impose a term of incarceration within the Guidelines range.

Respectfully Submitted,

LORETTA E. LYNCH
United States Attorney

By:  \_\_\_\_/s/_____
Saritha Komatireddy
Assistant United States Attorney
(718) 254-6054


cc:  Brian Ketcham, Esq. (by Email and ECF)
     Darcy Zavatsky, U.S. Probation Officer (by Email)

8